STATE of Tennessee, Appellee,

v.

**Bourke Palmer MYNATT, Jr., Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

July 20, 1984.

Permission to Appeal Denied by Supreme Court Dec. 17, 1984.

Carl R. Ogle, Jr., Jefferson City, for appellant.

William M. Leech, Jr., Atty. Gen. & Reporter, Kimberly J. Dean, Asst. Atty. Gen., Nashville, Richard Vance, Asst. Dist. Atty. Gen., Sevierville, for appellee.

## OPINION

DWYER, Judge.

The defendant, Bourke Palmer Mynatt, Jr., originally was charged with a felony involving violation of the election laws. He was allowed to plead guilty to violating T.C.A. § 2-19-102, a misdemeanor provision, and his 11 month, 29 day sentence was suspended, conditioned upon payment of a $500 fine and costs. Mynatt now appeals, challenging the length of the sentence imposed on the grounds that it is "excessively long under the circumstances presented by this case."

The record indicates that the defendant went to the County Election Commission to check his voter's registration card, found what he considered to be an inaccuracy, folded the card and left with it, defying the commissioner's demand that it be returned. He was charged with a felony under T.C.A. § 2-19-108, felonious possession of official registration or election supplies. Mynatt turned himself in to the sheriff and a few days later returned his card to the election commission. He maintained that he did not know that his action in taking the card was illegal or what the consequences were.

Pretrial diversion was denied, and, despite the fact that Mynatt had no prior record and was the married father of two and a former Optimist Club president, the State resisted suspension of his sentence. The prosecution pointed to Mynatt's position as chairman of the county Democratic Executive Committee, saying:

> ... [H]ere's a man who carries some weight in the political process. He is an official of a Party. He is charged with responsibilities. He is aware of the election laws ... [and] has willfully violated those same election laws.

The trial judge accepted this argument, noting that Mynatt's "very prominence prevented him claiming ignorance, lack of knowledge, lack of familiarity of the political process." The trial judge therefore imposed a stiff sentence and fine but immediately suspended the sentence,[1] noting the defendant's "good record." The trial judge concluded:

> That [disposition] seems to me to meet the ends of justice. The people in this county know that it will not be tolerated. This conviction verifies that.... It will be a deterrence.

On appeal, the State continues to argue that the lengthy sentence imposed is justifiable on the basis of deterrence. While we agree that deterrence was a legitimate factor for the trial court to consider, we do not agree with the State's argument that the length of the sentence may not be considered excessive as long as it falls within the limits set by the statute. The State relies on *State v. Bennett,* unpublished opinion of this court released at Knoxville on November 17, 1983, which cites *Dukes*

---

1. It was mentioned in oral argument and noted in the State's brief that appellant's suspended sentence was revoked following an arrest for D.U.I.

*v. State,* 578 S.W.2d 659, 666 (Tenn.Cr.App. 1978). With the advent of the Tennessee Criminal Sentencing Reform Act of 1982, that authority may be dated. Unlike here, the *Dukes* court was concerned with sentencing by a jury and not by the trial court. While the *Bennett* case was determined under the new sentencing act, it relied on *Dukes.* We will now review some of the salient facts to support our belief that the sentence imposed in this case was excessive.

After describing the offenses committed by appellant as "trivial" and "not that severe," the trial court sentenced appellant to the maximum term of imprisonment provided for by the law, 11 months and 29 days, and then suspended the sentence. The trial judge indicated that he did not believe that appellant knew he was committing a felony when he walked out of the Election Commission with his voter's registration card. He noted that appellant was not attempting to steal an election or deprive anyone of the right to vote. At most, his act could be described as defiant or arrogant.

■ The trial court also stated his reasons for denying pretrial diversion. The court described the appellant as a good citizen, a civic leader, and a man with a high profile in the community. The court noted that appellant was married, the father of two children, was in his forties and had no prior police record. In view of these remarks, it is apparent that this appellant was a prime candidate for diversion. He had the requisites and was the type of man that in all probability prompted our legislature to enact the pretrial diversion laws.

In complete incongruity to the laudatory remarks of the trial court, appellant was given the maximum possible prison sentence for his crime.[2] While the sentence was immediately suspended, the latter result could have been better accomplished by granting pretrial diversion. This extra-

ordinary relief was designed for those who can show that they were above-average citizens before impulsively committing an offense and that they can be relied upon to practice good citizenship in the future. *State v. Poplar,* 612 S.W.2d 498 (Tenn.Cr. App.1980). The trial judge clearly found appellant to be an above-average citizen, but it was apparently for this very reason that he denied diversion.

■ In imposing a sentence, the trial court must be guided by the sentencing considerations set forth in T.C.A. § 40–35–103. The only one of these considerations that this sentence even arguably comports with is T.C.A. § 40–35–103(1)(B), and under these circumstances a sentence of ten days at the most would have provided an effective deterrence. The punishment here clearly does not equate with the remaining considerations set forth in the statute.

In conclusion, this appellant obviously committed an impulsive and irrational act; he should not for that one transgression receive the harshest punishment on this misdemeanor that the law can apply. While, as argued by the State, it is within the limits of the law, the punishment under these circumstances is a far cry removed from the intent of the law. We do not condone this or any violation of the law, but it is also apparent that a sentence of ten days for appellant's transgression would have satisfied his most severe but fair-minded critic.

■ We have the authority to reduce this sentence. *Thompson v. State,* 192 Tenn. 298, 241 S.W.2d 404 (1950); *Brooks v. State,* 187 Tenn. 361, 215 S.W.2d 785 (1948); *McKnight v. State,* 171 Tenn. 574, 106 S.W.2d 556 (1937). Indeed, the new sentencing act specifically grants us this authority. T.C.A. § 40–35–402(c)(2). The reduction of excessive sentences on appeal is also in line with the principles set forth in the A.B.A. Standards for Criminal Justice 20–1.2. Accordingly, the sentence of

---

2. In deference to the trial court, in all probability the court would never have imposed the maximum sentence if there had appeared to be

any chance that it would have to be implemented.

**106**

confinement is reduced to 10 days in the county jail. The fine and costs are to remain intact. The judgment is affirmed but modified to reflect that the sentence of confinement for 11 months and 29 days is reduced to 10 days confinement. Our holding does not inhibit the trial court's authority consistent with this opinion to implement the 10 days confinement or to suspend it.

WALKER, P.J., and DAUGHTREY, J., concur.